

U.S. Department of Justice

*Michael J. Sullivan*
United States Attorney
District of Massachusetts

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 27, 2007

Ethan M. Posner
Covington & Burling LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401

      Re: United States v. Pharmacia & Upjohn Company, Inc.

Dear Mr. Posner:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney"), and your client, Pharmacia & Upjohn Company, Inc., a Delaware Corporation ("Pharmacia"), in the above-captioned case. The Agreement is as follows:

    1.    Change of Plea

At the earliest practicable date Pharmacia shall waive indictment and shall plead guilty to the Information attached hereto as Exhibit A. The Information charges that Pharmacia knowingly and willfully offered inflated payments on a contract to induce another party to recommend purchasing or ordering Pharmacia's drug products in violation of 42 U.S.C. §1320a-7b(b)(2)(B). Pharmacia acknowledges and agrees that it is in fact guilty of that offense. Pharmacia agrees to waive venue, any applicable statutes of limitations, and any legal or procedural defects in the Information.

    2.    Penalties

With respect to its violation of 42 U.S.C. §1320a-7b(b)(2)(B), Pharmacia is subject to a maximum possible fine of $500,000, twice the gross gain derived from the offense or twice the gross loss, whichever is greatest. See 18 U.S.C. §§3571(c) and (d). The gain from the offense is $12,300,000, and thus the maximum possible fine is $24,600,000.

Pharmacia may be sentenced to a term of probation of not less than one (1) year and not more than five (5) years. See 18 U.S.C. §3561(c)(1). Pharmacia shall also pay a special assessment of $400. See 18 U.S.C. §3013(a)(2)(B).

3. <u>Sentencing Guidelines</u>

The parties agree that the following provisions of the United States Sentencing Guidelines ("U.S.S.G.") apply to the sentencing of Pharmacia:

a. The parties agree that the Guideline Manual in effect as of November 1, 2000, should be used in determining Pharmacia's sentence. <u>See</u> U.S.S.G. §§1B1.11(a) and (b)(1);

b. The parties agree that the base fine is $12,300,000, which is the value of the unlawful payment. <u>See</u> U.S.S.G. §§8C2.3 and 2B4.1(c)(1)(A);

c. Pursuant to U.S.S.G. §8C2.5, the culpability score is 8 as determined as follows:

  (1) Base culpability score is five (5) pursuant to U.S.S.G. §8C2.5(a);

  (2) Add four (4) points in that the unit of the organization within which the offense was committed had 1,000 or more employees, and an individual within the high-level personnel of the unit participated in or condoned the offense;

  (3) Deduct one (1) point pursuant to U.S.S.G. §8C2.5(g)(3).

d. Pursuant to U.S.S.G. §8C2.6, the appropriate multiplier range associated with a culpability score of 8 is 1.6 to 3.2.

e. Thus, the Guideline Fine Range is $19,680,000 to $24,600,000. <u>See</u> 18 U.S.C. §§3571(c) and (d) (maximum fine is twice the gross gain or gross loss).

f. The parties agree that (1) disgorgement pursuant to U.S.S.G. §8C2.9 is not necessary, (2) there is no basis for a downward departure or deviation under the U.S.S.G. and (3) a fine within the guideline range will result in a reasonable sentence taking into consideration all of the factors set forth in 18 U.S.C. §§3553(a), 3572.

The United States may, at its sole option, be released from its commitments under this Agreement, including but not limited to, its agreement regarding the appropriate disposition of this case, if at any time between its execution of this Agreement and sentencing, Pharmacia:

  (a) Fails to admit a complete factual basis for the plea;

  (b) Fails to truthfully admit its conduct in the offense of conviction;

  (c) Falsely denies, or frivolously contests, relevant conduct for which Pharmacia is accountable under U.S.S.G. § 1B1.3;

2

    (d)    Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Pharmacia is accountable under U.S.S.G. § 1B1.3;

    (e)    Engages in acts which form a basis for finding that Pharmacia has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

    (f)    Attempts to withdraw its plea.

Pharmacia expressly understands that it may not withdraw its plea of guilty, unless the Court rejects this Agreement under Fed. R. Crim. P. 11(c)(5).

### 4. Agreed Disposition

The U.S. Attorney and Defendant agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following is the appropriate disposition of this case:

    (a)    a criminal fine in the amount of nineteen million, six-hundred and eighty thousand dollars ($19,680,000: culpability score of 1.6 x $12,300,000) to be paid within three business days of sentencing; and

    (b)    a mandatory special assessment of $400 pursuant to 18 U.S.C. §3013, which shall be paid to the Clerk of Court on or before the date of sentencing.

### 5. Payment of Mandatory Special Assessment

Pharmacia agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing.

### 6. Cooperation

Pharmacia shall cooperate completely and truthfully in any trial or other proceeding arising out of any ongoing federal grand jury investigation of the conduct at issue in the Information. Pharmacia's cooperation shall include furnishing to law enforcement agents, upon request, all documents and records in its possession, custody or control relating to the conduct that is within the scope of any ongoing grand jury investigation, trial or other criminal proceeding in the District of Massachusetts, and that are not covered by the attorney-client privilege or work product doctrine.

Notwithstanding any provision of this Agreement, Pharmacia is not required: (1) to request of its current or former officers, agents, or employees that they forego seeking the advice of an attorney nor that they act contrary to that advice; (2) to take any action against its officers, agents, or employees for following their attorney's advice; and (3) to waive any privilege or claim of work product protection.

7.     Probation Department Not Bound By Agreement

The sentencing disposition agreed upon by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the United States Probation Office.

8.     Fed. R. Crim. P. 11(c)(1)(C) Agreement

Pharmacia's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C). Pharmacia cannot withdraw its plea of guilty unless the sentencing judge rejects this Agreement. If the sentencing judge rejects this Agreement, this Agreement shall be null and void at the option of either the United States or Pharmacia.

Pharmacia may seek sentencing by the Court immediately following the Rule 11 plea hearing. The United States will not object to any request by Pharmacia that the Court sentence Pharmacia immediately following the Rule 11 plea hearing or prior to the completion of a Presentence Report. Pharmacia understands that the decision whether to proceed immediately following the plea hearing with the sentencing proceeding, and to do so without a Presentence Report, is exclusively that of the United States District Court.

9.     Civil Liability

By entering into this Agreement, the United States does not compromise any civil liability, including but not limited to any tax liability, which Pharmacia may have incurred or may incur as a result of its conduct and its plea of guilty to the charges specified in paragraph one of this Agreement.

10.    Waiver of Defenses

If Pharmacia's guilty plea is not accepted by the Court for whatever reason, or is later withdrawn for whatever reason, Pharmacia hereby waives and agrees it will not interpose, if charges are filed within six (6) months of the date on which such guilty plea is rejected or withdrawn, any defense to any charges brought against it which it might otherwise have for pre-indictment delay, any statute of limitations, or the Speedy Trial Act, except any such defense that Pharmacia may already have for conduct occurring before August 26, 2000.

11.    Breach of Agreement

If the U.S. Attorney determines that Pharmacia has failed to comply with any provision of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Pharmacia, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Pharmacia recognizes that no such breach by it of an obligation under this Agreement

4

shall give rise to grounds for withdrawal of its guilty plea. Pharmacia understands that, should it breach any provision of this agreement, the U.S. Attorney will have the right to use against Pharmacia before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by it, and any information, materials, documents or objects which may be provided by it to the government subsequent to this Agreement, without any limitation. In the event of a breach, Pharmacia, with respect to any charges which could have been brought as of March 23, 2007, hereby waives, and agrees it will not interpose, any defense to any additional charges brought against it which it might otherwise have for pre-indictment delay, any statute of limitations, or the Speedy Trial Act, except any such defense that Pharmacia may already have for conduct occurring before August 26, 2000.

12.    Corporate Authorization

Pharmacia's acknowledgment of this Agreement and execution of this Agreement on behalf of the corporation is attached hereto. Pharmacia shall provide to the U.S. Attorney and the Court a certified copy of a resolution of the Board of Directors of Pharmacia, affirming that the Board of Directors has authority to enter into the Plea Agreement and has (1) reviewed the Information in this case and the proposed Plea Agreement or have been advised of the contents thereof; (2) consulted with legal counsel in connection with the matter; (3) voted to enter into the proposed Plea Agreement; (4) voted to authorize Pharmacia to plead guilty to the charges specified in the Information; and (5) voted to authorize the corporate officer identified below to execute the Plea Agreement and all other documents necessary to carry out the provisions of the Plea Agreement. Pharmacia agrees that either a duly authorized corporate officer for Pharmacia shall appear on behalf of Pharmacia and enter the guilty plea and will also appear for the imposition of the sentence.

13.    Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

14.    Complete Agreement

This Agreement (along with the Side Letter dated March 27, 2007,) contains the complete and only agreement between the parties relating to the disposition of the conduct at issue in the Information. No promises, representations or agreements have been made other than those set forth in this letter and the Side Letter. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

      If this letter accurately reflects the Agreement between the U.S. Attorney and Pharmacia, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Jeremy M. Sternberg.

Very truly yours,

MICHAEL J. SULLIVAN<br>
United States Attorney<br>
District of Massachusetts

By: _____<br>
     JEREMY M. STERNBERG<br>
     Assistant U.S. Attorney<br>
     District of Massachusetts

ACKNOWLEDGMENT OF PLEA AGREEMENT

The Board of Directors has authorized me to execute this Plea Agreement on behalf of Pharmacia & Upjohn Company, Inc. The Board has read this Plea Agreement, and the attached criminal Information, or has been advised of the contents thereof, and has discussed them fully in consultation with Pharmacia's attorneys. I am further authorized to acknowledge on behalf of Pharmacia that these documents fully set forth Pharmacia's agreement with the United States, and that no additional promises or representations have been made to Pharmacia by any officials of the United States in connection with the disposition of this matter, other than those set forth in these documents.

Pharmacia & Upjohn Company, Inc.

By: *[signature]*
Its: Vice President and Secretary

Date: March 28, 2007


Ethan M. Posner
Covington & Burling
Counsel for Pharmacia

Date:_____

7

## ACKNOWLEDGMENT OF PLEA AGREEMENT

The Board of Directors has authorized me to execute this Plea Agreement on behalf of Pharmacia & Upjohn Company, Inc. The Board has read this Plea Agreement, and the attached criminal Information, or has been advised of the contents thereof, and has discussed them fully in consultation with Pharmacia's attorneys. I am further authorized to acknowledge on behalf of Pharmacia that these documents fully set forth Pharmacia's agreement with the United States, and that no additional promises or representations have been made to Pharmacia by any officials of the United States in connection with the disposition of this matter, other than those set forth in these documents.

Pharmacia & Upjohn Company, Inc.

By: _____
Its:

Date: _____

Ethan M. Posner
Covington & Burling
Counsel for Pharmacia

Date: 3/28/07

7

## UNANIMOUS WRITTEN CONSENT OF DIRECTORS
## OF PHARMACIA & UPJOHN COMPANY, INC.

The undersigned, being all of the Directors of Pharmacia & Upjohn Company, Inc., a Delaware corporation (the "Company"), pursuant to the provisions of Section 141(f) of the General Corporation Law of the State of Delaware, waive notice of the time, place and purpose of Meeting of the Board of Directors of the Corporation, and hereby consent to and approve the following resolutions and each and every action affected thereby:

WHEREAS, the U.S. Attorney's Office in Boston, Massachusetts has been conducting an investigation into the Company's conduct alleging that the Company offered remuneration to recommend the purchasing of drug products, the "Anti-kickback Matter";

WHEREAS, the Company's legal counsel has been negotiating a resolution of the Anti-kickback Matter;

WHEREAS, the Company's legal counsel has reported to the board the terms and conditions of a proposed resolution of the Anti-kickback Matter;

NOW, THEREFORE, BE IT:

RESOLVED, that the Company, is hereby, authorized to enter into the Plea Agreement dated March [   ], 2007 between the United States Attorney for the District of Massachusetts and Pharmacia & Upjohn Company, Inc., the "Agreement".

FURTHER RESOLVED, that Heidi Chen, President & Treasurer or any other Officer of the Company are hereby authorized and directed to take all actions and deliver any agreements, certificates and documents and instruments with respect to or contemplated by the Agreement and matters set forth above, including, without limitation, the payment of all amounts, fees, costs and other expenses, necessary or appropriate to effectuate the purpose and intent of the foregoing resolutions and to effectuate and implement the settlements contemplated hereby.

FURTHER RESOLVED, that any actions taken by the Officers of the Company prior to the adoption of these resolutions, that are within the authority conferred hereby, are hereby fully ratified, confirmed and approved as the act and deed of the Company.

\* \* \*

IN WITNESS WHEREOF, the undersigned Directors of the Company have executed this consent as of the ____28TH____ day of March, 2007.

_____
Heidi Chen

_____
Michael Diaco

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. |
| ) | |
| v. ) | VIOLATION: |
| ) | |
| PHARMACIA & UPJOHN ) | 42 U.S.C. §1320a-7b(b)(2)(B) |
| COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## INFORMATION

The United States Attorney charges that:

### COUNT ONE: 42 U.S.C. §1320a-7b(b)(2)(B)
### (Offer of Payment of Kickbacks)

At all times material hereto, unless otherwise alleged:

### The Defendant

1. **PHARMACIA & UPJOHN COMPANY, INC. ("PHARMACIA")** was a Delaware corporation, with a principal place of business in Kalamazoo, Michigan. **PHARMACIA** was a subsidiary of Pharmacia & Upjohn Company LLC, which was the successor to Pharmacia & Upjohn Company, a former subsidiary of Pharmacia Corporation, which during the relevant period of time (the year 2000) was a publicly traded company on the New York Stock Exchange. **PHARMACIA** and its corporate affiliates will be referred to in this Information as "**PHARMACIA**."

2. **PHARMACIA** was engaged in, among other things, the development, manufacture, promotion, sale and interstate distribution of prescription drugs intended for human use in the United States. **PHARMACIA** distributed or directed the distribution of pharmaceutical drugs to

all fifty states and the District of Columbia.

3. One of the pharmaceutical drugs promoted, sold and distributed interstate by **PHARMACIA** was a human growth hormone product called Genotropin.

4. The business unit within **PHARMACIA** that was responsible for the promotion, sale and distribution of Genotropin was the Endocrine Care Business Unit.

### The Bridge Program and the Selection of Company P

5. For the drug Genotropin, **PHARMACIA** used outside vendors for distribution, patient assistance and insurance reimbursement. **PHARMACIA** called this outsourced program the Bridge Program. Proper administration of the Bridge Program was critical to the success of Genotropin.

6. In early 2000, **PHARMACIA** determined that it was dissatisfied with its then current vendor on the Bridge Program and announced that it was putting the contract for the administration of its Bridge Program out to bid. In early to mid-2000, **PHARMACIA** met with certain potentially interested bidders and provided a Request for Proposal to these entities for a three year contract.

7. In June of 2000, **PHARMACIA** received bids from three entities; Company P, a subsidiary of Company Q, and Company R.

8. After receiving those bids, in or about early July 2000, **PHARMACIA** rated the bids using over a dozen criteria, including understanding the Bridge Program and its needs, ability to deliver Bridge Program needs, cost competitiveness, quality systems, products and services, and responsiveness. **PHARMACIA's** evaluation based on those criteria yielded a selection of

2

Company P. **PHARMACIA** evaluated Company P's bid as $12 million less expensive, over a three year period, than the nearest competitor's bid.

9. In mid-July 2000, the Endocrine Care team of **PHARMACIA** recommended to **PHARMACIA's** senior management that Company P be selected to manage the Bridge Program. That recommendation included the following statements:

> A team of representatives from Pharmacia's Procurement, Auditing Services, Accounting, Distribution, Legal, Sales, Accounting and Marketing functions was composed to perform site visits and review RFP responses and presentations. Based on input from Marketing, Accounting, Distribution, Auditing Services and Procurement through their individual completion of the RFP evaluation form, and internal financial analysis of proposed program costs, collectively the team recommends [Company P] as Pharmacia's new Genotropin Bridge Program outsourcing partner.

Shortly thereafter, by telephone, **PHARMACIA** notified Company P that it had been awarded the Bridge Program.

### Formulary Opportunities at Company Q

10. However, at or about the same time, **PHARMACIA** learned from Company Q of an opportunity to improve the formulary positioning and/or formulary ancillary relationships of **PHARMACIA** drug products at Company Q, one of the country's largest and most influential pharmacy benefit managers. Thereafter, **PHARMACIA** believed that Company Q was willing to recommend the purchasing or ordering of **PHARMACIA's** drug products, some or all of which were drug products that were eligible for payment in whole or in part under a Federal health care program, in return for **PHARMACIA** awarding the Bridge Program contract to the subsidiary of Company Q which had previously submitted a bid rejected by **PHARMACIA**.

11. The basis for **PHARMACIA's** belief, referred to above, included a July 13, 2000

3

conference call, initiated by Company Q, between employees of **PHARMACIA** and Company Q, during which employees of Company Q emphasized the interest of the subsidiary of Company Q in obtaining the Bridge Program contract and also described assistance that Company Q could provide with generating sales of **PHARMACIA's** drug products.

12. A further basis for **PHARMACIA's** belief, referred to above, included a meeting at **PHARMACIA's** Skokie, Illinois offices on July 20, 2000, between employees of **PHARMACIA** and employees of Company Q. At this meeting, the participants discussed Company Q's bid for the Bridge Program, and the fact that **PHARMACIA** viewed the bid as substantially more expensive than the bid from Company P. The participants also discussed the assistance that Company Q could provide with generating sales of **PHARMACIA's** drug products. A high level employee of Company Q also provided **PHARMACIA** with a private tutorial on Company Q's formulary bidding process.

13. Shortly thereafter, including on or about July 28, 2000 and July 31, 2000, **PHARMACIA** prepared financial analyses that showed that the anticipated financial benefits to **PHARMACIA** resulting from improved formulary positioning and formulary ancillary benefits from Company Q were worth millions of dollars in increased drug sales to **PHARMACIA**. One of these analyses noted that if the bids from Company P and the subsidiary of Company Q were analyzed on a stand alone basis, the choice would be Company P. However, this analysis noted that when factoring in the formulary positioning and formulary ancillary benefits that **PHARMACIA** expected it would obtain from Company Q if it awarded the Bridge Program to the subsidiary of Company Q, an award to the subsidiary of Company Q maximized the total

corporate value to **PHARMACIA**.

14. To assuage the Endocrine Care Business Unit that expected to incur more than $12 million in excess costs over 3 years if the subsidiary of Company Q were awarded the Bridge Program, **PHARMACIA** promised the Endocrine Care Business Unit that another business unit within **PHARMACIA** that expected to benefit from the improved formulary positioning and formulary ancillary benefits would reimburse the Endocrine Care Business Unit for the excess costs associated with selecting the subsidiary of Company Q as opposed to Company P.

## The Offer of the Bridge Program to the Subsidiary of Company Q

15. On or about August 1, 2000, **PHARMACIA** retracted the award of the Bridge Program contract to Company P, despite believing that Company P's bid price for the contract was millions of dollars lower, and the quality of services higher, than the bid presented by the subsidiary of Company Q.

16. **PHARMACIA** instead offered the Bridge Program contract to the subsidiary of Company Q to induce Company Q to provide improved formulary positioning and/or formulary ancillary benefits that **PHARMACIA** expected would increase its drug sales by millions of dollars.

17. On or about August 1, 2000, in the District of Massachusetts and elsewhere,

**PHARMACIA & UPJOHN COMPANY, INC.**

knowingly and willfully offered remuneration in the form of excess payments on a contract to administer the Bridge Program to a subsidiary of Company Q to induce Company Q to recommend purchasing or ordering **PHARMACIA's** pharmaceutical products, which were

eligible for payment in whole or in part under a Federal health care program.

All in violation of 42 U.S.C. §1320a-7b(b)(2)(B).

                                              MICHAEL J. SULLIVAN
                                              UNITED STATES ATTORNEY

By: _____
      Jeremy M. Sternberg
      Susan G. Winkler
      Assistant U.S. Attorneys

6